UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMALL BAKER,

               Plaintiff,

   v.

LAURA LEE HALE, *et al.*,

               Defendants.

Case No. C22-1672-LK-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a prisoner civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Jamall Baker is in the custody of the Washington State Department of Corrections ("DOC") and is currently confined at the Monroe Corrections Complex ("MCC") in Snohomish County, Washington. Plaintiff alleges in his Amended Complaint (Am. Compl. (dkt. # 5)) violations of federal and state law arising from the provision of purportedly inadequate dental care. Defendants in this action are three dentists who provided dental care to Plaintiff at MCC between 2016 and 2023: Dr. Laura Lee Hale, Dr. Valerie Weber, and Dr. James Hoag (collectively, "Defendants").

REPORT AND RECOMMENDATION - 1

1    Before the Court is Defendants' Motion for Summary Judgment (Mot. (dkt. # 36)),
2 seeking dismissal of all claims against all Defendants, and Plaintiff's Motion to Exclude
3 Defendants' Rebuttal Expert Richard A. Williamson (dkt. # 41). Having considered the parties'
4 submissions, the balance of the record, and the governing law, the Court concludes that
5 Defendants' Motion (dkt. # 36) should be granted and that Plaintiff's Amended Complaint (dkt.
6 # 5) and this action should be dismissed with prejudice as to Plaintiff's federal claims and
7 without prejudice as to Plaintiff's state law claims, and that Plaintiff's Motion to Exclude (dkt.
8 # 41) should be denied as moot, as further explained below.

9    **II.    BACKGROUND**

10   **A.    Factual History**

11   Plaintiff's claims stem from dental treatments performed by Defendants while Plaintiff
12 was incarcerated at MCC. Prior to the events giving rise to this lawsuit, Plaintiff suffered from
13 dental issues that required him to receive a partial set of lower dentures unrelated to this action.
14 (*See* Mot. at 2; Am. Compl. at ¶ 3.1.) Later, Plaintiff would require more teeth extractions from
15 his upper left mouth in 2017—this procedure and related issues form the basis of Plaintiff's
16 claims. (*See* First Yancey Decl. (dkt. # 37) at ¶ 26, Ex. X; Am. Compl. at ¶ 3.1.) The parties do
17 not appear to contest whether the extractions themselves were medically necessary, but instead
18 dispute whether the extractions' performance and related aftercare were deficient.

19            *i.    Dr. Laura Lee Hale's Care*

20   Dr. Hale was a dentist at MCC between June 2016 and September 2019. (Hale Dep. (First
21 Yancey Decl. at ¶ 16, Ex. N) at 10.) On June 28, 2017, Dr. Hale extracted five teeth from
22 Plaintiff's upper left mouth in order to prepare him for a denture. (*Id.* at 22; *see* First Yancey
23 Decl., Ex. X at 3.) Plaintiff testified that Dr. Hale "had a difficult time extracting the teeth"

REPORT AND RECOMMENDATION - 2

(Baker Dep. (First Yancey Decl. at ¶ 3, Ex. A) at 27-28), while Dr. Hale testified that she successfully completed the extractions and prepared Plaintiff for a denture by removing and smoothing the bone in his mouth. (Hale Dep. at 23-24, 27-28.) Plaintiff testified that he was in continuous pain after this procedure, and that he believed Dr. Hale removed too much bone from his mouth. (Baker Dep. at 32-37.) Plaintiff also testified that a portion of his mouth felt "bumpy" after the procedure, like "[b]one sticking out." (*Id.* at 33-34.)

Dr. Hale examined Plaintiff one week later in July 2017 and noticed the surgical area was red and tender but did not notice any bony protuberances in Plaintiff's mouth. (Hale Dep. at 28-30; *see* First Yancey Decl., Ex. X at 3.) A bony protuberance is a small protrusion of bone that can occur after a patient's mouth is prepared for dentures. (Hill Dep. (First Yancey Decl. at ¶ 4, Ex. B) at 42-43.) A protuberance can cause pain, especially if dentures are worn over it, though dentures may also be adjusted to accommodate protuberances and provide better comfort to patients. (*Id.* at 44-45.) Dr. Hale testified that redness and tenderness are common side effects after this surgery and that Plaintiff appeared to be in the "normal healing process," and recommended that Plaintiff continue with denture fabrication. (Hale Dep. at 28-30.) Dr. Hale examined Plaintiff again approximately one week later on July 13, 2017, and noted that the surgical area was "more pink and less red." (*Id.* at 30-31.) Dr. Hale saw Plaintiff again on August 16, 2017, and noted a "small roughness at upper left deep vestibule," but testified that otherwise Plaintiff's "healing [was] very nice." (Hale Dep. at 32-33.)

Based on Dr. Hale's referral, denturist David Hill saw Plaintiff in August 2017 to take impressions and bite registrations to fabricate dentures for Plaintiff. (Hill Dep. at 29, 31-32.) Mr. Hill was an outside specialist contracted by the DOC to provide denturist services to inmates, and only visited MCC once per month. (*Id.* at 18, 28, 80, 95.) Plaintiff received his newly

fabricated dentures from Mr. Hill on September 14, 2017. (*Id.* at 32.) After a patient receives dentures, it is common that the dentures need periodical adjustments to better fit the patient's mouth, especially as the patient's mouth continues to heal and "remodel" following the teeth extractions. (*Id.* at 54.) As mentioned above, sometimes a painful bony protuberance can develop in the patient's mouth during healing, which may be accommodated by adjustments to the denture, resolve on its own, or necessitate removal. (*Id.* at 43-45.)

In late October 2017, Plaintiff filed several grievances regarding severe pain at the site of Dr. Hale's extractions. (Krulewitch Decl. (dkt. # 46) at ¶ 5, Ex. 3 at 2-4.) Dr. Hale reviewed the grievances and, believing Plaintiff was suffering from a sore spot and difficulty adjusting to the denture, recommended that she examine Plaintiff. (Hale Dep. at 33-36.) Plaintiff was scheduled to see Dr. Hale on November 1, 2017, but Plaintiff refused to attend this appointment. (First Yancey Decl. at ¶ 27, Ex. Y; *see* Baker Dep. at 38.) On November 17, 2017, Mr. Hill saw Plaintiff, who complained of sore spots and gagging from the dentures. (Hill Dep. at 33.) Mr. Hill adjusted Plaintiff's dentures to address both issues. (*Id.*) Mr. Hill again adjusted Plaintiff's dentures on December 29, 2017. (First Yancey Decl. at ¶ 28, Ex. Z.) Plaintiff was scheduled to see Mr. Hill again on January 26, 2018, but Plaintiff canceled his appointment and was told to reschedule when he was ready. (Hill Dep. at 35.) On February 23, 2018, Mr. Hill saw Plaintiff again, adjusted Plaintiff's denture, and delivered the adjusted denture to Plaintiff on March 23, 2018. (Krulewitch Decl. at ¶ 4, Ex. 2 at 54-55.)

Plaintiff next sought dental care for this issue almost a year later in January 2019, when he filed grievances complaining of pain at the site of Dr. Hale's surgery. (Krulewitch Decl., Ex. 2 at 133-35.) Dr. Hale saw Plaintiff on January 14, 2019, and she noted that Plaintiff had a "small raised firm area" at the site of his extraction surgery. (First Yancey Decl. at ¶ 18, Ex. P.)

REPORT AND RECOMMENDATION - 4

Plaintiff reported pain when the denture was loose or removed, but no pain when the denture was in place. (*Id.*) In response, Dr. Hale smoothed part of the denture's surface and recommended further denture adjustments at an upcoming appointment with Mr. Hill. (*Id.*) Dr. Hale testified that she offered to perform a procedure to remove the raised area at the site of the prior surgery, but Plaintiff refused. (Hale Dep. at 40-41.)

Plaintiff filed another grievance again complaining of pain on February 17, 2019. (First Yancey Decl. at ¶ 30, Ex. BB.) However, Plaintiff withdrew this grievance several days after filing it. (*Id.*; *see* Baker Dep. at 51.) On June 27, 2019, Plaintiff was scheduled with Mr. Hill to adjust his dentures, but Plaintiff canceled because he had an extended family visit. (First Yancey Decl. at ¶ 6, Ex. D.) Plaintiff was rescheduled to be seen on July 25, 2019, but again canceled, this time due to a religious ceremony. (First Yancey Decl. at ¶ 5, Ex. C.) Plaintiff saw Mr. Hill for adjustments on August 22, 2019, September 26, 2019, November 21, 2019, January 30, 2020, and February 27, 2020. (Krulewitch Decl. at ¶ 7, Ex. 5 at 16-20.)

Based on medical records, Dr. Hale last consulted with Plaintiff on March 11, 2019, when he declined to receive a filling. (Krulewitch Decl., Ex. 2 at 31.) Dr. Hale transferred from MCC to work at a different correctional facility in September 2019. (Hale Dep. at 19.) In October 2019, Plaintiff filed a lawsuit against Dr. Hale, among others, in Thurston County Superior Court alleging state medical malpractice claims based on Dr. Hale's 2017 teeth extractions. *See Jamall S. Baker v. Laura L. Hale, et al.*, Case No. 19-2-05269-34 (Thurston Cty. Super. Ct.).[1]

---

[1] Plaintiff voluntarily dismissed this lawsuit in March 2022 and filed the present case in November 2022. (*See* dkt. # 1.)

REPORT AND RECOMMENDATION - 5

    *ii.*  Dr. Valerie Weber's Care

  Dr. Weber began working with the DOC at MCC in 2002, and first saw Plaintiff on November 6, 2019, for a limited examination. (Weber Dep. (First Yancey Decl. at ¶ 19, Ex. Q) at 9-10, 28, 31, 79-81.) Dr. Weber typically treated patients in a separate unit at MCC than the unit where Plaintiff was incarcerated, and as a result was not familiar with Plaintiff. (*Id.* at 28-29, 32-33.) However, the treating dentist in Plaintiff's unit fell ill, so Dr. Weber treated patients, including Plaintiff, that were previously assigned to him. (*Id.*) As a result, Plaintiff saw Dr. Weber at the clinic in Dr. Weber's unit. (*Id.*) Plaintiff's dental records were kept onsite at the clinic in his unit, and Dr. Weber was unable to access them during his visit. (*Id.* at 28-29, 32-33, 39.)

  At this visit, Plaintiff complained of an "ulcer" and pain in his mouth. (Weber Dep. at 32.) Upon examination, Dr. Weber found a "sore spot" where his upper left dentures rubbed against his mouth. (*Id.* at 32-33) Dr. Weber recommended that Plaintiff remove his dentures at night and when he did not otherwise need them for eating and visits. (*Id.*) Dr. Weber also prescribed two lidocaine mouthwashes to help heal Plaintiff's sore spot and referred Plaintiff to Mr. Hill to have his denture adjusted. (*Id.* at 32-33, 81-82) As mentioned above, Dr. Weber did not review Plaintiff's medical records before treating him because they were kept in another unit. (*Id.* at 28-29, 32-33.) Accordingly, Dr. Weber testified that she did not know how long Plaintiff had been suffering from the sore spot. (*Id.* at 33-34.) Similarly, Dr. Weber testified that when she treated Plaintiff, she was unaware of the teeth extractions and denture adjustments performed by Dr. Hale and Mr. Hill, respectively. (*Id.* at 37.)

  Dr. Weber next saw Plaintiff in June, August, and September 2022 to extract two teeth unrelated to Plaintiff's prior issues. (Weber Dep. at 43-47.) Plaintiff did not complain to Dr.

REPORT AND RECOMMENDATION - 6

Weber about his upper left extraction site or accompanying denture during any of these appointments. (*Id.* at 50.) Again, Dr. Weber did not review Plaintiff's dental records prior to treating him and was unaware of his history. (*Id.* at 50-51.)

Dr. Weber saw Plaintiff again in December 2022 and recommended that he receive new sets of dentures because his existing dentures were five years old and in need of replacement. (Weber Dep. at 53-55.) Dr. Weber does not appear to have treated Plaintiff after this and retired from the DOC in June 2023. (*See* Weber Dep. at 9.)

    iii.  *Dr. James Hoag's Care*

Dr. Hoag was a dentist for the DOC beginning in 2016 and was transferred to MCC on December 3, 2019. (Hoag Decl. (First Yancey Decl. at ¶ 9, Ex. G) at ¶ 5; Hoag Dep. (First Yancey Decl. at ¶ 24, Ex. V) at 7-8.) Dr. Hoag examined Plaintiff on January 15, 2020, in response to Plaintiff's complaint of an upper left denture sore. (First Yancey Decl. at ¶ 11, Ex. I; *see* Hoag Dep. at 20-21.) Dr. Hoag noted that Plaintiff's upper left denture "overextended"— meaning it "was made too big and was rubbing on the gumline"—and recommended that Plaintiff's denture be fitted with a "soft liner" to prevent sore spots from occurring. (*Id.*)

Dr. Hoag saw Plaintiff again on March 4, 2020, and noted a bony protuberance in his upper left area. (Hoag Dep. at 39.) Dr. Hoag believed that the protuberance could be accommodated by Plaintiff's upper denture and that its removal was unnecessary. (*Id.* at 39-40, 60.) Nevertheless, Dr. Hoag next saw Plaintiff on July 15, 2020, to consult on removing the protuberance that Plaintiff believed was causing pain at the site of his upper left denture. (Hoag Dep. at 40-41, 44; Krulewitch Decl., Ex. 2 at 35.) However, Plaintiff refused to consent to the procedure, questioned Dr. Hoag's qualifications, and stated that he needed to consult with his

attorney. (*Id.*; *see* Krulewitch Decl., Ex. 2 at 118.) As a result, Dr. Hoag did not move forward with the procedure to remove Plaintiff's protuberance. (Hoag Dep. at 40-44, 60.)

Plaintiff complained approximately five weeks later on August 22, 2020, again communicating that he agreed to consent to the procedure to remove the protuberance because his counsel "informed me that I have a duty to mitigate." (Hoag Dep. at 44-45; Krulewitch Decl., Ex. 2 at 120.) However, when Dr. Hoag saw Plaintiff on August 26, 2020, to consult on the procedure, Plaintiff stated that he was only consenting to the procedure "under duress"—a statement that he repeated in writing on the procedure's consent form. (*Id.*; First Yancey Decl. at ¶ 29, Ex. AA.) Dr. Hoag did not perform the procedure. (Hoag Dep. at 60; First Yancey Decl., Ex. AA.)

At some point later in 2020, Plaintiff reconsidered and agreed to have the procedure performed.[2] (Hoag Decl. at ¶ 10; Krulewitch Decl. at ¶ 10, Ex. 8 at 10.) After agreeing to the procedure and being told that he would be placed back on the inmates' treatment list (Krulewitch Decl., Ex. 8 at 10), Plaintiff complained again regarding pain at the site of his upper left dentures on or around December 14, 2020 (*id.* at 12), December 22, 2020 (*id.* at 14), December 29, 2020 (*id.* at 13), and January 11, 2021 (*id.* at 15). Dr. Hoag testified that he was unable to perform the procedure until January 2021, due to limited staff, clinic closings, and yard closings resulting from the COVID-19 pandemic. (Hoag Decl. at ¶ 11; Hoag Dep. at 49; Krulewitch Decl., Ex. 8 at 15.) On January 27, 2021, Dr. Hoag removed a bony protuberance from the site of Plaintiff's upper left dentures. (*Id.*) While Plaintiff alleges that he continues to suffer pain from Defendants'

---

[2] The record is unclear as to exactly when Plaintiff consented to this procedure. Dr. Hoag's declaration states that Plaintiff agreed to the procedure in August 2020. (Hoag Decl. at ¶ 10.) However, records submitted with Plaintiff's Response suggest that Plaintiff did not consent to his procedure until November 11, 2020. (Krulewitch Decl., Ex. 8 at 10 ("I have a duty to mitigate. Therefore, I will allow you to remove the bone that causes me pain.").)

REPORT AND RECOMMENDATION - 8

actions, Plaintiff does not appear to allege any specific wrongdoing that occurred after this procedure. (*See* Am. Compl. at ¶¶ 3.21-24.)

Plaintiff complained of pain again on February 15, 2021, and was told that this was a symptom of his recovery from surgery, which occurred less than three weeks earlier. (Krulewitch Decl., Ex. 8 at 18.) On April 8, 2021, Plaintiff was seen by Mr. Hill, who reported that Plaintiff was "pleased," had "good suction" on his dentures, and experienced "no pain." (*Id.*, Ex. 8 at 3.) Plaintiff continued to be seen by DOC dentists to address the fit of his dentures, unrelated teeth removals by Dr. Weber as discussed above, and a bone spur in the upper left. (*See, e.g.*, First Yancey Decl. at ¶¶ 7-8, 20-23, Exs. E, F, R, S, T, U.) Dr. Hoag retired on September 15, 2021. (Hoag Decl. at ¶ 5; *see* First Yancey Decl. at ¶ 10, Ex. H.)

**B.    Plaintiff's Claims**

Plaintiff's Amended Complaint asserts three causes of action against Defendants. The first two are claims under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Eighth Amendment. (Am. Compl. at 8-9.) Plaintiff alleges that Defendants violated his rights by providing him with deficient dental care and failing to protect him from pain and injuries stemming from his dental condition.[3] (*Id.*) The third cause of action is a state law tort claim for dental malpractice, which alleges that Defendants were negligent in providing deficient dental care to Plaintiff. (*Id.* at 9-10.) Plaintiff seeks an unspecified amount for compensatory and punitive damages, attorney's fees, and costs. (*Id.* at 10.)

---

[3] While the Amended Complaint presents two separate causes of action under § 1983, both are derived from Defendants' provision of allegedly deficient dental care. (Am Compl. at 8-9.) Plaintiff does not assert that Defendants were responsible for any conditions of his confinement beyond the care they provided as dentists. (*Id.*)

REPORT AND RECOMMENDATION - 9

Defendants moved for summary judgment on July 25, 2024, to which Plaintiff filed a Response (Resp. (dkt. # 45)), and Defendants filed a Reply (dkt. # 49). Neither party requested oral argument.

### III. DISCUSSION

#### A. Standard of Review

Summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The

Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

B.  **Section 1983 Claims**

A § 1983 plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983's causation requirement is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This duty includes ensuring that inmates receive adequate food, clothing, shelter, medical care, including dental care, and taking reasonable measures to guarantee the safety of inmates. *Id.*; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) ("[T]he eighth amendment requires that prisoners be provided with a system of ready access to adequate dental care."). To establish an Eighth

Amendment violation for inadequate care under § 1983, a plaintiff must demonstrate that he had a "serious medical need," and that the defendants' response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

A prison official is deliberately indifferent to a serious medical need if she "knows of and disregards an excessive risk to inmate health." *Farmer*, 511 U.S. at 837. To be found liable under the Eighth Amendment, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103, 105-06 (1976); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("Mere medical malpractice does not constitute cruel and unusual punishment."). Differences of opinion between a prisoner and prison medical staff or between medical professionals regarding the proper course of treatment do not give rise to a § 1983 claim. *Toguchi*, 391 F.3d at 1058. Nor do prison inmates have an "independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986). Instead, "a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

REPORT AND RECOMMENDATION - 12

          *i.*      *Section 1983 Claims Against Dr. Laura Lee Hale*

The crux of Plaintiff's allegations against Dr. Hale is that Plaintiff's dental condition was too complex for Dr. Hale to handle, that Dr. Hale failed to provide effective treatments, and that she should have referred him to a prosthodontist. (*See* Resp. at 7-10). Plaintiff argues that Dr. Hale did "nothing . . . to determine why [Plaintiff] was having this pain and, what could be done to alleviate his pain," drawing a comparison to *Hunt v. Dental Department*, where the Ninth Circuit held that knowingly denying necessary dental care could state a claim under § 1983.[4] (Resp. at 9-10 (citing *Hunt*, 865 F.2d at 200).) But Plaintiff's circumstances are inapposite to *Hunt* because Plaintiff received medically acceptable dental care from Dr. Hale and the other Defendants. While "[t]he provision of some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements," Plaintiff has not provided material evidence that his dental care was medically unacceptable, or identified any instances where he complained and was not seen by MCC dental staff. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 793 (9th Cir. 2019).

Rather, Plaintiff was dissatisfied with the care that was delivered to him, and his Response relies heavily on expert opinions of Dr. Jay D. Schulman to argue that Defendants fell below the standard of care and should have referred Plaintiff to a prosthodontist. (*See* Second Yancey Decl. (dkt. # 50) at ¶ 4, Ex. CC.) Differences of opinion between a prisoner and prison medical staff or between medical professionals regarding the proper course of treatment do not give rise to a § 1983 claim. *Toguchi*, 391 F.3d at 1058. Likewise, Plaintiff's desire to see a prosthodontist does not establish a § 1983 claim because Plaintiff does not have an "independent

---

[4] Plaintiff's citation to *Hunt* includes a purported quotation that, troublingly, is absent from that opinion. (*See* Resp. at 9-10 ("leaving a person in pain for any prolonged period of time without treatment, if the defendant knows the person is in pain, does state a claim.").) Plaintiff's counsel is reminded of their duty of candor to the Court.

REPORT AND RECOMMENDATION - 13

constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *See Roberts*, 783 F.2d at 870. Dr. Hale's treatment decisions, including the decision not to refer Plaintiff to a prosthodontist, do not represent cruel and unusual punishment. *See Estelle*, 429 U.S. 97, 107 (1976) ("[T]he question whether . . . forms of treatment [are] indicated is a classic example of a matter for medical judgment."). "At most it is medical malpractice, and as such the proper forum is the state court." *See id.*

Plaintiff also fails to identify any evidence showing that Dr. Hale had the subjective knowledge required to be deliberately indifferent to Plaintiff's medical needs. In fact, Plaintiff's own expert opined that "Dr. Hale negligently failed to recognize that the bone at Mr. Baker's surgical site could not accommodate a well-fitted denture fabricated by a denturist after she surgically removed [Plaintiff's] teeth." (Second Yancey Decl., Ex. CC at 4.) If Dr. Hale "failed to recognize" Plaintiff's purported dental issues, she did not have the subjective knowledge necessary to find deliberate indifference. *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn . . . and [s]he must also draw the inference."). Simply knowing that Plaintiff had "a difficult case," as Plaintiff asserts, does not amount to a constitutional violation. Nor does Plaintiff's assertion that Dr. Hale's "course of treatment was below accepted professional standards" (Resp. at 7), preclude dismissal of his § 1983 claims since "[a] showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Toguchi, 391 F.3d at 1060. Accordingly, Plaintiff's § 1983 claims against Dr. Hale should be dismissed.

                *ii.*       *Section 1983 Claims Against Dr. Valerie Weber*

Plaintiff's allegations against Dr. Weber—that she failed to review Plaintiff's medical records, failed to provide Plaintiff with an effective treatment, and failed to refer Plaintiff to a prosthodontist (Resp. at 10)—do not show that Dr. Weber was deliberately indifferent to Plaintiff's medical needs. According to Plaintiff, Dr. Weber "failed to realize, as a reasonable and prudent dentist would have, that a clinically adequate denture could not be made by a denturist." (*Id.* at 10.) But whether Dr. Weber's "clinical treatment decisions were below the standard of care" (*id.*) is not relevant to a § 1983 claim. *See* Toguchi, 391 F.3d at 1060 ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.").

Failing to review a patient's medical records, even if the treating medical professional had access to them, is not deliberate indifference under the Eighth Amendment. *See, e.g.*, *Martinez v. United States*, 812 F. Supp. 2d 1052, 1059-60 (C.D. Cal. 2010) (finding the prison doctor who prescribed medication to the plaintiff without reviewing his medical file did not act with deliberate indifference because the doctor was not aware the plaintiff was allergic to the medication). Indeed, by allegedly failing to review Plaintiff's medical records, Dr. Weber would have been ignorant of any medical conditions noted in the records, and therefore would have lacked the knowledge necessary to show she was deliberately indifferent. *See id.* If, as Plaintiff argues, Dr. Weber "failed to realize" that Plaintiff had a serious medical risk, she again lacked the subjective knowledge to find deliberate indifference. *Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.").

Furthermore, there is no material evidence that Dr. Weber's treatment was "was medically unacceptable under the circumstances," or chosen "in conscious disregard of an excessive risk to [Plaintiff's] health." *Toguchi*, 391 F.3d at 1058 (quotations omitted). Dr. Weber saw Plaintiff for a limited examination during which she addressed Plaintiff's complaint, recommended further adjustments to Plaintiff's denture, and prescribed lidocaine mouthwashes to treat Plaintiff's pain. (Weber Dep. at 32-33, 81-82.) As with Dr. Hale, Plaintiff's arguments against Dr. Weber improperly rest on differences of opinion regarding the proper course of treatment and a supposed right to see a prosthodontist. *See Toguchi*, 391 F.3d at 1058; *Roberts*, 783 F.2d at 870. Rather, the undisputed facts show that Dr. Weber lacked the requisite knowledge to be deliberately indifferent, and Plaintiff's § 1983 claim should be dismissed.

   *iii.*  *Section 1983 Claims Against Dr. James Hoag*

According to Plaintiff's expert Dr. Schulman, Dr. Hoag "failed to identify the protuberances . . . as impediments to a clinically acceptable denture" and "failed to realize . . . that fabricating a clinically adequate denture . . . was beyond a denturist's skillset." (Resp. at 13 (quoting Second Yancey Decl., Ex. CC at 13-14).) As discussed above, "failing to realize" a serious medical need falls short of deliberate indifference. *Farmer*, 511 U.S. at 837. Plaintiff further argues that if Dr. Hoag had reviewed Plaintiff's "dental history since 6/28/17, he would have realized . . . that [Plaintiff's] case was complex . . . and would have requested a consultation with a prosthodontist." (Resp. at 13.) Again, failing to review medical records does not give rise to deliberate indifference. *See Martinez*, 812 F. Supp. 2d at 1059-60. Accordingly, Dr. Hoag lacked the requisite mental state to be deliberately indifferent to Plaintiff's serious medical needs.

The undisputed facts show that Dr. Hoag provided Plaintiff with significant care. In fact Dr. Hoag removed the bony protuberance that, according to Plaintiff, caused much of his suffering. (Hoag Decl. at ¶ 11; Hoag Dep. at 49.) There is no material evidence that Dr. Hoag's treatment was medically unacceptable. As discussed above, Plaintiff did not have a constitutional right to see a prosthodontist. *See Roberts*, 783 F.2d at 870. Differences of opinion between Defendants and Plaintiff's expert are not the bases of § 1983 claims. *Toguchi*, 391 F.3d at 1058. Nor is there evidence that the delay in performing that procedure was deliberate or even attributable to Dr. Hoag. Instead, Plaintiff twice—in July and August 2020—refused to consent to the procedure to remove the protuberance. (Hoag Dep. at 40-41, 60.) Records suggest that Plaintiff may not have even consented to the procedure until November 2020 (*see* Krulewitch Decl., Ex. 8 at 10), and Plaintiff's procedure was further delayed until January 2021 due to the COVID-19 pandemic. (Hoag Decl. at ¶ 11; Hoag Dep. at 49; Krulewitch Decl., Ex. 8 at 15.) Accordingly, Plaintiff's § 1983 claims against Dr. Hoag should be dismissed.

### C. Qualified Immunity

Qualified immunity protects government officials from civil liability under § 1983 so long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To determine if an official is entitled to qualified immunity, a court must evaluate two independent prongs: (1) whether the official's conduct violated a constitutional right; and (2)

whether that right was clearly established at the time of the incident." *Castro v. County. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (citing *Pearson*, 555 U.S. at 232). Either prong may be considered first. *Pearson*, 555 U.S. at 236. As discussed above, Plaintiff has not identified material facts showing that Defendants violated his constitutional rights. The Court therefore need not address the second prong of the qualified immunity analysis.

### D.    Medical Malpractice Claims

Finally, Plaintiff asserted state law medical malpractice claims against each of the Defendants. (*See* Am. Compl. at 9.) The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). Trial has not yet been scheduled in this matter. (*See* dkt. ## 15, 24, 29, 31, 35.) Because Plaintiff's federal claims are subject to dismissal based upon their failure to identify material facts showing a violation of his federal constitutional or statutory rights, this Court should decline to exercise jurisdiction over Plaintiff's state law claims.

### E.    Motion to Exclude Expert Witness

Plaintiff's Motion to Exclude requests that the Court exclude the opinion of Defendants' rebuttal expert witness Richard A. Williamson on the grounds that Dr. Williamson's report is not a proper rebuttal, but rather an initial expert report that was served untimely pursuant to Federal Rule of Civil Procedure 26(a)(2). (Dkt. # 41.) This Court's recommendation to dismiss Plaintiff's claims did not rely on Dr. Williamson's report. Since Plaintiff's claims should be dismissed, as discussed above, the Court recommends that Plaintiff's Motion to Exclude should be denied as moot.

## IV. CONCLUSION

Based on the foregoing, this Court recommends that Defendants' Motion (dkt. # 36) be granted, and that Plaintiff's Amended Complaint (dkt. # 5) and this action be dismissed with prejudice as to Plaintiff's federal claims and without prejudice as to Plaintiff's state law medical malpractice claims. This Court further recommends that Plaintiff's Motion to Exclude (dkt. # 41) be denied as moot. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 2, 2024**.

The Clerk is directed to send copies of this order to the parties and to the Honorable Lauren King.

Dated this 17th day of September, 2024.

_____
MICHELLE L. PETERSON
United States Magistrate Judge